Chief Justice Bibb
delivered the Opinion of the Court.
Alexander McKinsey and Lacey Me-Kinsey bound themselves “to make, or cause to he “made, a general warrantee deed unto the said John “Hughes, on or before the 28th day of this present “instant,” for a tract of land of 147 acres; part of Moses Hanks’ patent, as described in the bond bearing date 23d june, 18Í 7.
Hughes was immediately let into possession, and has continued to enjoy the issues, rents and profits, without any disturbance from any quarter.
On the 28th October, 1819, Hughes issued a writ in covenant against Alexander and Lacey McKinsey; which was executed on Alexander on the 29th October; but Lacey was returned by the sheriff, ‘no im habitant of his bailiwick. ’ On the third day of May, 1820, and third day of the term of the Pulaski Circuit, the plaintiff abated his suit as to Lacey, and took judgment for damages against Alexander, which were assessed to the sum of $661 20, by default.
Before this judgment, (to wit, on the preceding day of the term,) the obligor, Alexander McKinsey, exhibited his bill, to compel Hughes to accept the title, and for an injunction against the proceedings at law; obtained an injunction, and executed the injunction bond on the same day; but the subpoena was not served until after the judgment. The complainant afterwards obtained another injunction against the execution of the judgment, and on the final hearing, that injunction was perpetuated; from which Hughes has appealed.
The bill is exhibited by Alexander McKinsey, against Hughes, and against Lacey McKinsey; the title of the complainant is regularly derived from the Commonwealth, by patent to Moses Hanks; by deed from Hanks and wife to complainant, who, at the time of filing his bill originally, exhibited and tendered in court a deed by himself and wife, duly *39 .acknowledged, with her relinquishment of dower, in apt form, and duly recorded, and prayed that Hughes might accept it, &e. which bears date 2 9th October, 1819.
Proofs.
Objection of Hughes against executing the contract.
A previous purchase ol' a part of the land, made by the vendee of another person, who had no right is no ground for his refusing to complete the purchase.
To the title of the complainant no objection is made, none is suggested by the answer; no conflicting adverse claim is pretended. It appears by allegation and proof, that the complainant liad made several efforts to convey to Hughes before suit brought. On one occasion, it is proved, the complainant sent a messenger, in the Summer of 1817, requesting Hughes to meet him and wife at the Clerk’s office, on Monday then next succeeding, for the purpose of making and receiving the deed for the land. This message was delivered to Hughes; who replied to the messenger, that he might inform McKinsey, that he would receive no right that McKinsey could or would make; that some person was claiming a part of the land. Complainant and wife went on the day; hut defendant, Hughes, did not attend.
The only reason or objection started by defendant to receiving the title to the land, is, that the land he purchased of the complainant, and as shewn to him, includes about fifteen acres, with a valuable spring, which he had previously purchased from Robert Boyd; which spring was a great inducement to him, Hughes, to make the purchase. This is the excuse which he gravely puts into his answer, and attempts to prove, as the reply he sent to the complainant by his messenger, in 1817: But he does not now allege or shew Boyd’s right, or that there is any patent, entry, survey or claim, adverse to the 1 itle of the complainant.
However plausible this excuse (of a previous purchase made by the defendant himself of Boyd, for fifteen acres of the land he, defendant, purchased of complainant,) may appear to a perception blinded, or to a conscience deadened, by self-interest, it can weigh nothing in a court of justice. The defendant ought to be taught, that he cannot in j ustice and in conscience, plead his own wrongful or mistaken purchase of Boyd, as an excuse for refusing to abide his *40 purchase of McKinsey, the lawful propiietor and possessor; that it is fraudulent to acquire possession under his purchase of McKinsey, to hold that possession, and to endeavor to evade the contract with McKinsey, by setting up his own previous bargain with Boyd for a, part of the same land. In his answer he expressly states, that • complainant shewed him this land and spring, and now he does not pretend to say it is not McKinsey’s right, or that any ocher had a shadow of right to it.
Where the purchaser has had tno uninterrupted pos* session, and is the cause ■why the conveyance was not jando, ho shall ho compelled lo execute the ennIraH, iJuiHg-h ho had co:nlui'.riocd his action before the bill was fib d, and afterwards obtained judgment on (.he conveyance bond.
The complainant alleges, that he is invested with the title to the laud; that the defendant does not deny, and the complainant exhibits his title. The complainant alleges, that the defendant has had continued, uninterrupted possession; that the defendant does not deny, and it is proved; the complainant alleges, that within the few days allowed for making the deed, he was about making it, but the complainant suggested a doubt as to the quantity; and that the complainant need not be in a hurry; that the complainant asked defendant what surveyor he would choose to survey the land; the defendant selected James Bartgrove; that afterwards the complainant applied to the said surveyor — and when he was ready, the defendant was notified to attend and see the survey made, and receive his deed; that the complainant attended accordingly, and had the land run off, and the quantity holds out 170 acres, instead of 147 acres; hut the defendant failed to attend: that allegation is not denied. In short, it does appear, that defendant has himself been in full possession and enjoyment of the land; that he has been the cause why the title was not conveyed to him long before the suit; and the allegation, that the last notice by complainant to defendant,‘to meet him at the Cleric’s office, on the 29th of October, 1819, to receive his deed, was met only by a suit at law, and.writ served on him on the day, and whilst he was in the act of consummating the deed, is not denied by the defendant, hut evaded.
The complainant has made out a case to entitle him to relief in equity against mere lapse of time.
But to the title, as decreed and adjudged sufficient, objections are made in this court.
objections to vendor’s title statec| ancl °' TCnue
Kelinquisbment °f dow*
The deed from Hanks, the patentee, ánd his wife, Ip complainant, McKinsey, is objected to, because the Clprk, in certifying her relinquishment dower, has stated, “she being examined by meas the law directs, voluntarily relinquished her right of dower to the land mentioned in the said indenture,” &c. Hence it is inferred, that-the title tendered, is incumbered with the dower of the wife of Flanks. That deed bears date in 1807 — it was signed and acknowledged by the wife* • By the act of 1803, (1 Digest 321,) it is declared — “it shall and may be lawful for any relinquishment of flower to be acknowledged before the county court clerk, who shall record a certificate thereof.” That made by the Clerk m this instance is comprehensive enough, as to her acknowledgment of the deed; and as to her voluntary relinquishment of dower, upen examina-' tion, “as the law directs” — we must, as to the subject of dower; give credence to this judicial act, .and presume it was rightly done, until the contrary is shewn. But there is no allegation by the pleadings, that the dower of Mrs. Hanks is an incumbrance: Whether she is alive or dead, is not a question made by the defendant in tlie court below. Her life and potential right to be endowed is not alleged*
Two other deeds; (other than that of the 29th óf Octobef, 1819,) from Alexander and Lacéy McKinsey, and their wives, were produced and offered pending the suit.
As to tlie dower of the femes, it is sufficient to remark, that the dower of the wife of Alexander McKinsey, as well as his own right in fee, is sufficiently and fully conveyed and released tó the defendant Hughes, by the deed of 29th of October, 1819. The wife of Lacey McKinsey does not appear to be dowable of this estate; for the title to the land never was in any manner vested in Lacey — but if she were, in truth, dowable, the deeds of 18th November, 1822, and of January, 1822, from Alexander and Lacey, McKinsey and their wives, are sufficiently certified by the justices of Alabama, with the testimonials annexed — not only as to the acknowledgment of Lacey McKinsey, but also as to the privy examination' and acknowledgment of the wife.
Conveyances
Turner, and Monroe for appellant. Crittenden and Triplett, for appllce.
The deed of January, 1822, is sufficiently certified as to the said Lacey McKinsey; the deed of November, 1822, is sufficient as to his wife; the deed of October, 1819, is sufficient as to Alexander McKinsey and wife. Thus the defendant, Hughes, has the title guarantied, not only because it is made by Alexander McKinsey, who shews a clear title, without any circumstance or adversary claim appearing, but also by the warranties of both the McKinseys, and by the relinquishment of dower of their wives.
The decree of the Circuit Court upon the premises, does not appear to be liable to any impeachment for error.
Decree affirmed with costs.